UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-2121(DSD/JSM)

Karl Oelhafen,

Plaintiff,

v. **ORDER**

Skyjack, Inc..

Defendant.

---

Skyjack, Inc.,

Third-Party Plaintiff,

v.

BMSI, Inc., Columbia Building Services, Inc. and A.P.I., Inc.,

Third-Party Defendants.

Philip A. Pfaffly, Esq., Barbara B. Bloom, Esq., Steven R. Kluz, Esq. and Rider, Bennett, 2000 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402, counsel for Karl Oelhafen.

John C. Hughes, Esq. and Meagher & Geer, 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN 55402 and Marc F. Benjoya, Esq. John R. Davis, Esq., Andrew J. Holen, Esq. and Cassiday, Schade & Gloor, 415 Washington Street, Suite 214, Waukeegan, IL 60086, counsel for Skyjack, Inc.

James F. Mewborn, Esq., Paul E. Darsow, Esq. and Arthur, Chapman, Kettering, Smetak & Pikala, 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN 55402, counsel for BMSI.

Michael D. Barrett, Esq. and Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416, counsel for Columbia Building Services.

FILED JUL 11 2003
Richard D. Sletten, CLERK
Judgment Ent'd. ____
Deputy Clerk's Initials ____

Terri L. Hommerding, Esq. and Candlin & Heck, 380 St. Peter Street, Suite 603, St. Paul, MN 55102, counsel for A.P.I.

This matter is before the court upon the motion for summary judgment of third-party defendant A.P.I.; upon the motion for summary judgment of third-party defendant BMSI; upon motion in limine, the motion for summary judgment and the motion dismissing Building Maintenance Service, Incorporated's ("BMSI") complaint in intervention of defendant Skyjack, Inc. ("Skyjack") and upon the motion for summary judgment of third-party defendant Columbia Building Services, Inc. ("Columbia").

Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants A.P.I.'s motion for summary judgment on Skyjack's strict liability claim. The court denies in part and grants in part A.P.I.'s motion for summary judgment on Skyjack's negligence claim. Specifically, the court denies A.P.I.'s motion for summary judgment on Skyjack's claim that A.P.I. was negligent in failing to inspect the premises and grants A.P.I.'s motion for summary judgment on Skyjack's remaining negligence claims against A.P.I. The court also grants BMSI's motion for summary judgment on Skyjack's negligence claims against it. The court denies BMSI's alternative motion for summary judgment on its cross-claim against Columbia. The court denies Skyjack's motion in limine to exclude expert testimony, denies

Skyjack's motion for summary judgment, and denies Skyjack's motion to dismiss BMSI's complaint in intervention. Finally, the court grants Columbia's motion for summary judgment on Skyjack's negligence claims and grants Columbia's motion for summary judgment on Skyjack's strict liability claim against it.

## BACKGROUND

This action arises out of an accident that occurred on May 28, 1999. Plaintiff Karl Oelhafen was using a scissors lift to wash windows on the Seventh Street skyway connected to the City Center Complex in downtown Minneapolis when the scissors lift tipped over, causing him to fall to the ground. Plaintiff claims that he sustained injuries as a result of the accident.

### I. The Parties

Plaintiff was employed by BMSI as a window washer. Aside from window washing, BMSI employees perform substitute janitorial and maintenance work. BMSI supplies labor to companies such as third-party defendant Columbia. At all relevant times, Donald LeSage was BMSI's president and only shareholder.

Columbia is in the business of "[j]anitorial maintenance, lighting maintenance, power washing, snow removal, environmental clean-up, Venetian blind cleaning, and miscellaneous maintenance services." (Barrett Aff. Ex. B at 13:22-25.) At the time of the accident, plaintiff was performing job duties for Columbia. An

agreement existed between BMSI and Columbia whereby BMSI provided labor to Columbia in connection with its provision of various kinds of building maintenance services to customers. (Benjoya Aff. Ex. A.) At all relevant times, Dave Bovender was Columbia's operations manager and Mike LeSage was Columbia's president and sole shareholder. Columbia owned the scissors lift involved in plaintiff's accident.

Third-party defendant A.P.I. is in the business of selling, renting and servicing area-work platforms, such as the scissors lift involved in this lawsuit. A.P.I. is the dealer that sold the scissors lift to Columbia. Wayne Berry was A.P.I.'s sales representative at the time of plaintiff's accident.

Defendant Skyjack manufactured the subject scissors lift and shipped it to A.P.I. on or about July 19, 1996.

## II. Scissors Lift Training, Maintenance and Operation

### A. Training

Berry, of A.P.I., coordinated the sale of the scissors lift to Columbia. (Dawson Aff. Ex. D, at 112-13.) When a customer purchases a piece of equipment from A.P.I., standards promulgated by the American National Standards Institute (ANSI) obligate him to provide safety training to anyone intending to operate the equipment. (ANSI Standards provided by API; Darsow Aff. Ex. D at 14; A.P.I.'s Mem. Supp. Mot. Summ. J. at 10.) Berry claims that he offered safety training to Columbia's Mike LeSage and Columbia's

employees when Columbia purchased the scissors lift from A.P.I. (Darsow Aff. Ex. D at 15-16; A.P.I.'s Mem. Supp. Mot. Summ. J. at 10.) While Berry claims that Mike LeSage declined the offer, (Darsow Aff. Ex. D at 16; A.P.I.'s Mem. Supp. Mot. Summ. J. at 10), Mike LeSage claims that Berry and one of A.P.I.'s technicians did in fact provide safety training on correct and safe lift operation to Mike LeSage and Steven Hall, BMSI's operations manager when Columbia purchased the lift. (Darsow Ex. B at 26-27; 31.)

While the parties dispute whether Columbia provided sufficient training to plaintiff, the undisputed facts illustrate that Columbia provided some training to plaintiff in safe scissors lift operation. Columbia's operations manager Bovender held one-hour long safety meetings every Friday. (Sherman Aff. Ex. A Bovender Dep. at 32.) Those meetings included instruction and safety training on all equipment, including the scissors lift. (Darsow Ex. C at 28-29; 92.) Plaintiff attended those meetings. (Darsow Ex. C at 32-33, 92.)

Columbia also paired plaintiff with one of its employees who worked with plaintiff on the lift for a number of days to provide plaintiff with additional training. (Darsow Aff. Ex. C at 30, Hommerding Aff. Ex. A at 20.) The training consisted of plaintiff observing the other employee operating the scissors lift control and the other employee directing him in how to use the controls and how the lift operated. (Darsow Aff. Ex. C at 42.) The individual

who worked with plaintiff on the lift discussed some safety concerns with plaintiff, including not running the lift when it was fully extended, being aware of traffic and other things going on around him as he is extending the platform, not operating the lift on hills and being aware of curbs. (Hommerding Aff. Ex. A at 45.)

Further, plaintiff recalls seeing warning labels on the scissor lift, including warnings against operating the lift on a hill or steep incline. (Hommerding Aff. Ex. A at 54.) Plaintiff also looked at the operator's manual for the scissors lift for approximately 15 to 20 minutes. (Darsow Aff. Ex. C at 45.) Plaintiff recognized that the operator's manual and warning labels contained warnings against driving the lift near drop-offs and holes, raising the platform on uneven or soft surfaces and driving onto uneven or soft surfaces when the lift was elevated. (Hommerding Aff. Ex. A 58-59.)

**B. Maintenance**

Columbia's Bovender and Fromming were responsible for maintaining the scissors lift. (Darsow Aff. Ex. C at 62; A.P.I.'s Mem. Supp. Mot. Summ. J. at 8.) Bovender would send the lift to A.P.I. if it needed quarterly inspection or routine maintenance. (Hommerding Aff. Ex. B at 62.) Bovender also provided weekly maintenance and cleaning of the machine. (Hommerding Aff. Ex. B at 64.)

### C. Operation/Inspection

Mike LeSage evaluated all work sites where the scissors lift would be used, including the sidewalks outside the City Center up to the skyway, to assure that it would be used in manner consistent with the manufacturer's recommendations. (Darsow Aff. Ex. B at 61, 122.) He testified that A.P.I.'s Berry also evaluated the sidewalk area outside the City Center and reported no problem utilizing the scissors lift in that area. (Darsow aff. Ex. B at 71, 100-101.) Berry agrees that he went downtown to look at a number of sites maintained by Columbia, including the City Center property. (BMSI Ex. D at 46:7-12.) Berry denies that Mike LeSage ever advised him that the scissors lift would be used for window cleaning operations on skywalks near the City Center. (Darsow Aff. Ex. D at 49, 54.)

## III. The Accident

Plaintiff was using a scissors lift to wash windows on the Seventh Street skyway connected to the City Center complex. He believes the weather conditions made it safe to operate the scissors lift. (Darsow Aff. Ex. E at 79-80.) After he washed the first section of windows, plaintiff moved the lift to a section of the skyway which crosses Seventh Street and faces Nicollet Mall. Plaintiff observed the sidewalk terrain while inside the elevated lift from a distance of 9 to 10 feet. (Darsow Aff. Ex. B. at 101-02.) Plaintiff agrees that the sidewalk tiles varied in texture, creating an uneven surface, in the area where the accident

occurred. (Darsow Aff. Ex. B at 131.) After plaintiff started to wash the second set of windows, he felt the scissors lift jerk forward, then stop and shake slightly, at which time the scissors lift jerked forward again and rolled off the curb. (Darsow Aff. Ex. B 108.) When plaintiff started falling, he jumped from the lift and landed on the sidewalk. (Darsow Aff. Ex. B at 108, 112.)

**IV. This Litigation**

In October, 2001, plaintiff commenced this action against Skyjack alleging negligence, strict liability and breach of warranty. (Compl.) Plaintiff specifically alleges that the scissors lift was inherently defective and dangerous to its user because it was equipped with a single hydraulic parking brake at the left rear wheel and did not contain a similar hydraulic brake at the right rear wheel.

BMSI intervened in plaintiff's name to pursue its workers' compensation subrogation claim pursuant to Minn. Stat. § 176.061 (2002) on the theory that Skyjack negligently caused plaintiff's injuries. Skyjack then brought third-party actions against A.P.I., Columbia and BMSI, alleging a claim of negligence against all three parties and a claim of strict liability against A.P.I. and Columbia. Through the litigation, three primary theories have emerged as to the cause of plaintiff's accident: (1) that the accident resulted because the scissors lift was defective, (2) that the accident resulted from user misuse and (3) that the accident

resulted because of third-party negligence. Now, A.P.I., BMSI and Columbia each move for summary judgment. Skyjack also brings a motion in limine, a motion for summary judgment and a motion to dismiss BMSI's complaint in intervention.

**DISCUSSION**

**I. Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party.

See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. A.P.I.'s Motion for Summary Judgment**

In its summary judgment motion, A.P.I. argues that the court should dismiss Skyjack's strict liability claim on the basis of Minn. Stat. § 544.41, subd. 2, and that the court should grant its motion for summary judgment on Skyjack's negligence claims because Skyjack has failed to produce any evidence to support its negligence claims against A.P.I. The court considers each argument in turn.

**A. Minn. Stat. § 544.41, Subd. 2.**

Minn. Stat. § 544.41, subd. 2 provides, in relevant part:

> Subd. 2. Once the plaintiff has filed a complaint against a manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant [nonmanufacturer], provided the certifying defendant is not within the category set forth in subdivision 3....
>
> Subd. 3. A court shall not enter a dismissal order relative to any certifying defendant

> even though full compliance with subdivision 1 has been made where the plaintiff can show one of the following:
>
> (a) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;
>
> (b) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>
> (c) That the defendant created the defect in the product which caused the injury, death or damage.

In this case, plaintiff has filed a complaint against Skyjack, the manufacturer, and Skyjack has answered. A.P.I. therefore argues that it is entitled to dismissal of Skyjack's strict liability claim pursuant to Minn. Stat. § 544.41, subd. 2 because Skyjack has not produced evidence showing that any of the exceptions list in subd. 3 apply. (A.P.I.'s Mem. Supp. Mot. Summ. J. at 20.) Columbia supports A.P.I.'s argument. Skyjack, however, argues there is a factual dispute as to whether A.P.I. had actual knowledge of the defect in the product which caused the injury. Because only the second exception to Minn. Stat. § 544.41, subd. 2 appears to be in dispute, the court will consider whether A.P.I. had actual knowledge of the product defect which allegedly caused plaintiff's injury.

The material facts relevant to Skyjack's strict liability claim against A.P.I. are undisputed. A.P.I.'s general manager

coordinated the sale of the Skyjack scissor lift with Mike LeSage of Columbia. Berry testified that he knew that the SJII 4626 lift came with one hydraulic parking brake and that a second brake was offered as an option. (Benjoya Aff. Ex. E at 125, 127.) While Skyjack presents evidence that Berry knew about option for a second parking brake, his knowledge of that option was only as a dealer aware of optional equipment. Skyjack presents no evidence that Berry or others at A.P.I. knew that the single hydraulic parking brake was or should be considered a defect in the equipment. Because the statute requires that A.P.I. must have "actual knowledge of the defect in a product," Minn. Stat. § 544.41, subd. 2 (emphasis added), and because A.P.I. did not have knowledge that the single parking brake constituted a defect, the court grants A.P.I.'s motion to dismiss Skyjack's strict liability claim against it. Cf. Willmar Poultry Co. v. Carus Chem. Co., 378 N.W.2d 830, 836 (Minn. Ct. App. 1985)(finding, in products liability case, no evidence suggesting distributors knew and appreciated the risks involved).

**B. Negligence Claims**

The court next considers Skyjack's negligence claims against A.P.I. The elements of negligence are (1) duty, (2) breach of that duty, (3) the breach of that duty must be the proximate cause of plaintiff's injury and (4) plaintiff did in fact suffer injury. Hudson v. Snyder Body, Inc., 326 N.W.2d 149, 157 (Minn. 1982).

"Negligence is generally a question of fact to be determined by the jury." Thieman v. Johnson, 257 F.2d 129, 132 (8th Cir. 1958). However, negligence becomes an issue of law where the facts are undisputed and lead to only one conclusion. See Ford Motor Co. v. Zahn, 265 F.2d 729, 730 (8th Cir. 1959); Riggs v. Standard Oil Co., 130 F. 199, 202 (D. Minn. 1904).

In its third-party complaint, Skyjack alleges that A.P.I. was negligent. Specifically, Skyjack claims:

> That if Skyjack should be found liable for injuries to plaintiff, ... it was the direct and proximate result of one or more of the following negligent acts and/or omissions by third party defendant, A.P.I. Inc.:
>
> a. Carelessly and negligently failed to train plaintiff, Karl Oelhafen, with respect to the safe and proper use of the SJII 4626, serial number 74159.
>
> b. Failed to provide Columbia Building Services, Inc., its contractors, its employees and plaintiff, Karl Oelhafen, with equipment suitable for the work being performed by them at the time and place alleged in the Complaint when it knew or should have known of the purposes in which Columbia Building Services, Inc. and the plaintiff use the lift;
>
> c. Failed to warn Columbia Building Services, Inc., its contractors, its employees, and plaintiff Karl Oelhafen, of the dangers then and there existing when A.P.I., Inc. should have known that said warning was necessary to prevent injury to the plaintiff;

> d. Failed to warn Columbia Building Services, Inc., its contractors, its employees, and plaintiff, Karl Oelhafen, that improper use of the SJII 4626, serial number 74159 scissor lift can result in the type of incident complained of;
>
> e. Failed to adequately inspect the premises where the work was being performed so as to discover a safe and suitable area for the plaintiff, Karl Oelhafen, to perform his work;
>
> f. Failed to provide appropriate maintenance to the SJII 4626, serial number 74159, scissor lift being used by plaintiff, Karl Oelhafen, so as to prevent the type of incident complained of; and
>
> g. Was otherwise negligent in its acts or omissions with regard to work plaintiff performed.

(Third Party Compl. at 12-13.) The court considers each of Skyjack's allegations in turn.

**1. Failure to Train**

The ANSI standard provides, in relevant part:

> 5. Responsibilities of Dealers
>
> 5.6.1 Training on Delivery. Manufacturer's operating instruction and required training on the proper use and operation of the aerial platform shall be provided upon each delivery by sale, lease or rental.
>
> 5.9 Record Retention. Dealer(s) shall retain the following records for at least 3 years:
> ...

> (2) Records of the person(s) trained upon each delivery of an aerial platform.

(Hommerding Aff. Ex. K at 2.) Based upon that standard, A.P.I., as the distributor of the scissor lift, had a duty to provide training on the proper use of the scissor lift to anyone who intended to run the machine and had a duty to maintain proper records. (Hommerding Aff. Ex. D at 14; Hommerding Aff. Ex. K at 2.)

The parties dispute whether A.P.I. satisfied its duties. A.P.I.'s Berry claims that he personally offered training to Mike LeSage and his employees or contractors. (Darsow Aff. Ex. D. at 15-16.) While Berry believes that Mike LeSage declined the training, (Darsow Aff. Ex. D. at 16), Mike LeSage remembers that he and Columbia's operations manager received training from Berry and one of A.P.I.'s technicians, (Darswo Aff. Ex. B at 26-27, 31). He explained that the training was specifically organized for the two of them at A.P.I.'s facility in Minneapolis on the day of purchase. (Darsow Aff. Ex. B at 26-27.) He recounts that the training covered subjects including the function and operation of the scissors lift, the weight restrictions on the platform and the extension platform, and the fact that the lift must be operated on solid surfaces. (Darsow Aff. Ex. B at 27.)

Based upon either version of these facts, A.P.I. satisfied its duty to train. If Mike LeSage declined training, as Berry alleges, then A.P.I. satisfied its duty by offering training because A.P.I.

cannot force Columbia to accept the training. If Mike LeSage engaged in training as he alleges, then A.P.I. satisfied its duty to provide training on the safe operation of the scissors lift. A.P.I. was not negligent in failing to train.

Even if the court were to conclude that A.P.I. did not fulfill its duty to train or to record, the court finds no evidence that either failure caused plaintiff's injuries as required to establish liability for negligence. In fact, there is absolutely no evidence that any failure to record caused plaintiff's injuries.

Further, even if A.P.I. failed to train plaintiff, undisputed evidence illustrates that plaintiff was trained on how to use the scissors lift. He received training from another employee on how to use the lift. (Darsow Aff. Ex. E at 38-39.) Plaintiff worked with that employee two or three times. (Darsow Aff. Ex. E at 40). During those times plaintiff observed the employee operating the controls of the lift and the employee also "walked [plaintiff] through the controls and how the lift worked." (Darsow Aff. Ex. E at 42.) Plaintiff also received a copy of the lift's operating manual, which plaintiff "looked [at] for 15 to 20 minutes." (Darsow Aff. Ex. E at 44.)

Further, Columbia's operation's manager Bovender held one-hour long safety meetings every Friday. (Sherman Aff. Bovender Dep. at 32.) Those meetings included instruction and safety training on all equipment, including the scissors lift. (Darsow Aff. Ex. C at

28-29.) Plaintiff attended those meetings, including meetings covering the scissors lift. (Darsow Aff. Ex. C at 32-33.) Skyjack even concedes that "Columbia appears to have trained plaintiff in safe scissors lift operation." (Skyjack's Mem. Opp. Summ. J. for Columbia at 8.) Because plaintiff was trained in how to use the scissors lift, no evidence suggests that any failure to train plaintiff by A.P.I. caused plaintiff's injuries. Accordingly, the court grants A.P.I.'s motion for summary judgment on Skyjack's failure to train negligence claim.

**2. Failure to Provide Suitable Equipment**

A.P.I.'s Berry worked with Columbia's Mike LeSage for up to one year to determine the right piece of equipment for Columbia to purchase because Columbia intended many uses for the equipment. (Darsow Aff. Ex. D at 39.) Berry testified that he advised Mike LeSage that Columbia could not purchase one piece of equipment to satisfy all of Columbia's needs. (Darsow Aff. Ex. D at 40.) He also testified that he recommended two different pieces of equipment to Mike LeSage. (Darsow Aff. Ex. D at 40-41.) He recommended "a scissor lift for one application and a trailer-mounted tow-behind-type of boom for another application." (Darsow Aff. Ex. D at 41.) He recommended the former for indoor application and the latter for outdoor application. (Darsow Aff. Ex. D at 41.) Columbia, however, only purchased the scissors lift.

The fact that Columbia failed to take A.P.I.'s recommendation not to purchase two pieces of equipment does not render A.P.I. negligent because A.P.I. does not have a duty to force its customers to follow its recommendations. Therefore, A.P.I. satisfied its duty to provide suitable equipment and the court grants A.P.I.'s motion for summary judgment on that negligence claim.

**3. Failure to Warn**

Skyjack alleges that A.P.I. was negligent in failing to warn Columbia of the existing dangers and that improper use could result in injury. Skyjack's memorandum only supports its "failure to warm" claim by arguing that A.P.I. failed to train. (Skyjack's Mem. Opp. Summ. J. for A.P.I. at 5-6.) However, as discussed above, A.P.I. was not negligent in training. Therefore, for the same reasons that the court grants A.P.I.'s motion for summary judgment on Skyjack's "failure to train" claim, the court grants A.P.I.'s motion for summary judgment on Skyjack's "failure to warn" claim.

**4. Failure to Inspect The Premises**

A.P.I. claims that it had no duty to the inspect the premises where plaintiff was working at the time of the accident. (A.P.I.'s Mem. Supp. Mot. Summ. J. at 27.) Pursuant to ANSI standards, Skyjack and Columbia claim that A.P.I. had a duty to know the expected use and intended environment for the lift. (Darsow Aff.

Ex. D at 76-77.) Both parties therefore claim that A.P.I. had a duty to inspect the premises where the accident took place. The contradictory testimony from Berry and Mike LeSage create a question of fact as to whether A.P.I. had a duty to inspect the premises where the accident took place and, if A.P.I. had such a duty, a question of fact exists as to whether A.P.I. fulfilled its duty. Therefore, the court denies A.P.I.'s motion for summary judgment on this negligence claim.

**5. Failure to Provide Appropriate Maintenance**

Skyjack alleges that A.P.I. was negligent in failing to maintain the scissor lift. Specifically, Skyjack argues that an interlock switch may have been altered, that this alteration "could have occurred" as a result of the damage caused by the accident or that this alteration could have occurred prior to the accident. Skyjack further alleges that the condition could have existed" at the time of A.P.I.'s last inspection of the scissors lift. (Skyjack's Mem. Opp. Summ. J. at 8.) Skyjack presents no evidence to support any of these allegations. Instead, Skyjack bases its allegations on mere speculation. Speculation, however, is not enough to withstand a motion for summary judgment. The court therefore grants A.P.I.'s motion for summary judgment on Skyjack's claim that A.P.I. was negligent in failing to provide appropriate maintenance.

**6. Otherwise Negligent**

Skyjack alleges that A.P.I. was otherwise negligent. Because Skyjack presents no evidence suggesting A.P.I. was otherwise negligent, the court grants A.P.I.'s motion for summary judgment on that claim.

**III. BMSI's Motion for Summary Judgment**

Skyjack also brings a negligence claim against BMSI. BMSI moves for summary judgment on that claim because BMSI alleges that no evidence supports it. Columbia joins in BMSI's motion as it relates to the third-party claims against both parties. BMSI also moves for summary judgment on its cross-claim against Columbia, claiming that its subcontracting agreement with Columbia requires Columbia to defend and indemnify BMSI in this action. The court considers each motion in turn.

**A. BMSI's Motion for Summary Judgment on Skyjack's Negligence Claims**

Specifically, Skyjack claims BMSI was negligent through the following acts or omissions:

> a. Carelessly and negligently failed to train plaintiff, Karl Oelhafen, as to prevent injury to the plaintiff;
>
> b. Failed to adequately supervise the work being performed by the plaintiff, Karl Oelhafen;
>
> c. Failed to warn the plaintiff, Karl Oelhafen, of the dangers then and there existing when BMSI, Inc., knew or should have known that said warning was necessary to prevent injury to the plaintiff;

> d. Failed to adequately inspect the premises where the work was being performed so as to discover a safe and suitable area for plaintiff, Karl Oelhafen, to perform his work;
>
> e. Failed to provide a safe and suitable area for the work performed by plaintiff, Karl Oelhafen, on behalf of the third party defendant;
>
> f. Failed to provide suitable equipment for plaintiff, Karl Oelhafen, to perform his work at the area where the accident took place;
>
> g. Failed to ensure plaintiff was performing work in a safe and proper manner;
>
> h. Was otherwise negligent in its acts or omissions with regard to work plaintiff performed.

(Third Party Compl. at 4.) The court considers each claim in turn.

**1. Failure to Train and Failure to Warn**

Skyjack alleges that BMSI failed to train plaintiff and failed to warn plaintiff of the dangers then and there existing. "The master is under the duty of warning his employees of dangers incident to the work of which he should be aware because of his superior position, but which are unknown to them." Symons v. Great N. Ry. Co., 293 N.W. 303, 307 (Minn. 1940).

In this case, the undisputed facts illustrate that plaintiff received appropriate training. As discussed above, plaintiff received training from a Columbia employee, plaintiff attended Friday meetings that included instruction and safety training on all equipment, including the scissors lift, and plaintiff read the

operating manual for the lift. A BMSI employee also instructed plaintiff to maintain a safe distance from the curb. (Darsow Aff. Ex. E at 98-99.) Even Skyjack concedes that "[i]t is certainly true that plaintiff was aware that the lift should not be operated on uneven surfaces and in close proximity to drop-offs such as the curb..." (Skyjack's Mem. Opp. Summ. J. for BMSI at 7) and that Columbia trained plaintiff in safe scissors lift operation (3c at 8.) Because plaintiff clearly received training on the safe operation of the scissors lift, any failure by BMSI to train or warn plaintiff could not have caused plaintiff's injuries.

Skyjack nonetheless maintains that a factual dispute exists between plaintiff and Columbia's Bovender concerning the placement and use of the lift in the presence of an uneven surface and curb. Skyjack points to Bovender's deposition testimony, in which he testified that plaintiff's placement of the lift with the long side parallel to the skywalk would be in violation of Columbia's safety policies. (Benjoya Aff. Ex. B at 55-56.) Skyjack then asserts that plaintiff testified that he was trained to place the lift in the manner in which he set up the lift at the time of the accident. (#3a at 7.) However, Skyjack cites no evidence to support that assertion. (Skyjack's Mem. Opp. Summ. J. at 7.) Thus, because the undisputed material facts illustrate that BMSI properly trained and

warned plaintiff, the court grants BMSI's motion for summary judgment on Skyjack's "failure to train" and "failure to warn" negligence claims.

**2. Failure to Provide Plaintiff with Safe Workplace, Failure to Supervise Plaintiff and Failure to Inspect Work Site**

BMSI moves for summary judgment on Skyjack's claim that BMSI failed to provide plaintiff with a safe workplace, failed to supervise plaintiff and failed to inspect plaintiff's work site. To support its argument, BMSI relies upon Novotny v. Bouley, 27 N.W.2d 813 (Minn. 1947). In that case, Edwin Frank Novonty, a minor, was caught by an overhanging telephone wire as he road on a load of baled straw while working as a farm hand. Id. at 815. The minor's mother sued several people, including the owner of the farm for which the minor worked. She claimed that the owner failed to provide her son with a safe workplace. Id. at 817. Novotny obtained a verdict against the owner and he appealed. The Minnesota Supreme Court reversed the trial court's decision with respect to the owner's motion for a new trial, explaining:

> One of the nondelegable absolute duties of the master is to furnish a safe place to work. Plaintiffs contend that the bales of straw were so placed on the truck without being tied that the top of the load became an unsafe place to work. Since the accident happened because of a low-hanging wire over the road, the load and the untied condition of the bales cannot be considered to be a proximate cause of the accident. Nor can [the owner] be charged with failure to furnish Edwin a safe place to work because of the condition of the

> highway itself, unsafe because of the low-handing wire only, for which condition he can in no way be held responsible. Id. at 817.

Skyjack tries to distinguishes Novonty, arguing that BMSI had control over the instrumentality causing injury in this case and thus failed to provide a safe workplace, failed to supervise plaintiff and failed to inspect. In support of its argument, Skyjack asserts that:

> BMSI arguably had control over the plaintiff's use of the scissor lift at this particular site. BMSI arguably could have provided a different piece of equipment to plaintiff for the performance of his work duties. BMSI arguably could have instructed Columbia Building Services to provide different equipment for the plaintiff's work. BMSI arguably could have controlled the plaintiff's positioning of the scissor lift given the dangerous conditions including an uneven surface and drop-off. BMSI arguably had control over the plaintiff's conduct and use of the lift as well as control over the manner in which plaintiff would perform his job duties at this particular accident site.

(Skyjack's Mem. Opp. Summ. J. for BMSI at 4.)

Skyjack, however, appears only to speculate on these facts because Skyjack points to no evidence to support its argument. Skyjack's mere assertions are not enough to withstand summary judgment because Rule 56(e) requires Skyjack, as the nonmoving party "to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. at 324.

Thus, because Skyjack provides no evidence indicating that BMSI had any control over the instrumentality causing the injury in this case or otherwise indicating that BMSI in any way failed to provide plaintiff with a safe workplace, failed to supervise plaintiff or failed to inspect plaintiff's work site, and because the evidence indicates that BMSI acted reasonably, the court grants BMSI's motion for summary judgment on those negligence claims. See Dahlbeck v. DICO Co., 355 N.W.2d 157, 163 (Minn. Ct. App. 1984)(affirming trial court's directed verdict in products liability case for third-party defendant, plaintiff's employer, where third-party plaintiff, the manufacturer, failed to establish a common law duty or a breach of the duty to provide a safe work place by failing to investigate work site or inspect equipment).

**3. Failure to Provide Plaintiff with a Safe and Suitable Work Area or Suitable Equipment**

In its complaint, Skyjack also alleges that BMSI failed to provide plaintiff with a safe and suitable work area and failed to provide plaintiff with suitable equipment.

> The common law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees [sic] is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen.

Netzer v. N. Pac. Ry. Co., 57 N.W.2d 247, 253 (Minn. 1953)(quoting Seaboard Air Line Ry. Co. v. Horton, 233 U.S. 492, 501-02 (1914);

Colby v. Gibbons, 276 N.W.2d 170, 177 n.6 (Minn. 1979))(explaining that an employer must exercise ordinary care and is not the guarantor or insurer of the safety of the employee's workplace); Baumgartner v. Holslin, 52 N.W.2d 763, 765 (Minn. 1952)(explaining employer has duty to exercise reasonable care to provide employee with safe workplace).

As discussed, Skyjack merely asserts that:

> BMSI arguably had control over the plaintiff's use of the scissor lift at this particular site. BMSI arguably could have provided a different piece of equipment to plaintiff for the performance of his work duties. BMSI arguably could have instructed Columbia Building Services to provide different equipment for the plaintiff's work.

(Skyjack's Mem. Opp. Summ. J. for BMSI at 4.) Skyjack, however, presents no evidence to support its assertions. Specifically, Skyjack presents no evidence that BMSI acted unreasonably by failing to provide plaintiff with a safe and suitable work area or by failing to provide plaintiff with suitable equipment or that either failure caused plaintiff's accident.

Instead, the evidence suggests BMSI satisfied its non-delegable duty to act reasonably. Columbia had responsibility for providing workers with the equipment necessary for its building maintenance activities pursuant to its subcontracting agreement. (Darsow Aff. Ex. F at ¶ ¶ 3-4.) Columbia's Mike LeSage evaluated all work sites where the scissors lift would be used, including the sidewalks outside the City Center up to the skyway, to assure that

it would be used in a manner consistent with the manufacturer's recommendations. (Darsow Aff. Ex. B at 61, 122.) There is no evidence that those site inspections ever created a problem for BMSI employees in the past and there is no evidence that anything about Mike LeSage's inspection or the equipment he provided made the accident foreseeable to BMSI (or Columbia).

Thus, because Skyjack cannot withstand a motion for summary judgment with mere assertions, Celotex Corp., 477 U.S. at 324, and because the evidence indicates that BMSI acted reasonably, the court grants BMSI's motion for summary judgment on Skyjack's claims that BMSI failed to provide plaintiff with a safe and suitable work area and failed to provide plaintiff with suitable equipment.

### 4. Otherwise Negligent

Skyjack alleges that BMSI was otherwise negligent. Because Skyjack presents no evidence suggesting that BMSI was otherwise negligent, the court grants BMSI's motion for summary judgment on this negligence claim.[1]

---

[1] BMSI also argues that Skyjack expert testimony is inadmissable for summary judgment purposes. Specifically, BMSI argues that the experts' Rule 26 reports fail to satisfy the Daubert standard and thus that those reports are insufficient to create a genuine issue of material fact that might preclude summary judgment in BMSI's favor. The court does not reach the merits of BMSI's argument because, even if the court were to consider Skyjack's expert testimony, the court finds no issue of material fact exists to defeat BMSI's motion for summary judgment.

**B. BMSI's Motion for Summary Judgment on Cross-Claim against Columbia**

Alternatively, BMSI moves for summary judgment on its cross-claim against Columbia, arguing that Columbia is contractually obligated to defend and indemnify BMSI in this action. To support its argument, BMSI relies upon the indemnity clause of the subcontracting agreement between the two parties, in which Columbia contracts "to defend, indemnify and hold harmless, BMSI, its officers, owners, agents, and employees from any changes, losses, damages or causes of action suffered by BMSI, its officers, owners, agents, or employees in connection with the performance of their duties" under the agreement (Darsow Aff. Ex. F at 1.) Columbia responds that the indemnification clause does not obligate Columbia to defend and indemnify BMSI against all claims, including claims grounded on BMSI's own negligence.

"Indemnity agreements are to be strictly construed when the indemnitee [in this case BMSI] seeks to be indemnified for its own negligence. There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication." Farmington Plumbing & Heating Co. v. Fischer Sand and Aggregate, Inc., 281 N.W.2d 838, 842 (Minn. 1979); Nat'l Hydro Sys. v. M.A. Mortenson Co., 529 N.W.2d 690, 694 (Minn. 1995); Bogatzki v. Hoffman, 430 N.W.2d 841, 845 (Minn. Ct. App. 1988); Braegelmann v. Horizon Dev. Co., 371 N.W.2d, 644, 646 (Minn. Ct. App. 1985)

Agreements seeking to indemnify the indemnitee for losses occasioned by its own negligence are not favored by the law. Nat'l Hydro Sys., 529 N.W.2d at 694; Oster v. Medtronic, Inc., 428 N.W.2d 116, 118 (Minn. Ct. App. 1988). Courts "have been reluctant to impose indemnity unless [they] are able to identify some specific language expressing an intent to indemnify the indemnitee for claims arising out of its own negligence." Nat'l Hydro Sys., 529 N.W.2d at 694. Put another way, such provisions are not construed in favor of indemnification "'unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it.'" Id. (quoting Braegelmann, 371 N.W.2d at 646); Oster, 428 N.W.2d at 118.

However, the contract need not specifically refer to negligence "if the language of the contract necessarily includes claims of the indemnitor's negligence." Bogatzki, 430 N.W.2d at 845; see Johnson v. McGough Constr. Co., 294 N.W.2d 286, 288 (Minn. 1980)(rev'd by statute); Oster, 428 N.W.2d at 118; Osgood v. Med., Inc., 415 N.W.2d 896, 902 (Minn. Ct. App. 1987). "The test is whether the language is so broad that it necessarily applies to negligence." Bogatzki, 430 N.W.2d at 845.

In this case, Columbia agreed "to defend, indemnify and hold harmless, BMSI, its officers, owners, agents, and employees from any changes, losses, damages or causes of action suffered by BMSI, its officers, owners, agents, or employees in connection with the

performance of their duties" under the agreement (Subcontracting Agreement at 1.) That indemnification language clearly contrasts with language in other cases where courts have found that the language expressly provides for indemnification of the indemnitee's negligence. See Johnson v. McGough Constr. Co., 294 N.W.2d at 288 (enforcing indemnity provision where subcontractor agreed to indemnify contract for all claims, "*including . . . claims for which the Contractor may be, or may be claimed to be, liable*"))(rev'd by statute)(emphasis added); Lake Cable Partners v. Interstate Power Co., 563 N.W.2d 81, 86 (Minn. Ct. App. 1997)(enforcing indemnification where "[t]he specific language requiring Lake Cable to indemnify IPC for IPC's negligence includes '*negligence on the part of [IPC] or claimed on the part of [IPC]*'")(emphasis added); Bogatzki, 430 N.W.2d at 845 (finding language necessarily implies indemnity for own negligence where lease provision indemnified indemnitee for specific acts of negligence); Oster, 428 N.W.2d at 118 (indemnification agreement indemnifies party for negligence "*regardless of whether or not it is caused in party by a party indemnified hereunder.*")(emphasis added). Because the indemnification language contains no express language requiring Columbia to defend and indemnify BMSI for its own negligence, the court will not infer such an obligation. Accordingly, the court denies BMSI's alternative motion for summary judgment on its cross-claim against Columbia.

**IV. Skyjack's Motion in Limine to Exclude Expert Testimony, for Summary Judgment and to Dismiss BMSI'S Complaint in Intervention**

Skyjack makes a motion in limine to exclude the opinions and testimony of Donald J. Anderson, plaintiff's expert. Skyjack also moves for summary judgment on plaintiff's claims and moves to dismiss BMSI's Complaint in Intervention.

**A. Skyjack's Motion in Limine**

Skyjack moves to exclude Anderson's testimony from evidence because Skyjack claims that Anderson's testimony fails to satisfy the requirements for expert testimony under the Federal Rules of Evidence and the Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993) standard. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness had applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the Supreme Court has instructed, the district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable." Daubert, 509 U.S. at 589, 597-98; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 146 (1999)(extending Daubert to

technical and other specialized expert testimony). "[D]oubts regarding 'whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998)(quoting Larabee v. MM & L Int'l Corp., 896 F.2d 1112, 1116 n.6 (8th Cir. 1990)).

In Daubert, the Supreme Court identified four factors for district courts to use in determining the admissibility of expert testimony pursuant to Rule 702: (1) whether the expert's hypotheses can be or have been tested, (2) whether the expert's methodology has been subjected to peer review, (3) the rate of error associate with the methodology and (4) whether the methodology is generally accepted within the scientific community. Daubert, 509 U.S. at 593-94. These factors are not exclusive and the court's inquiry is "a flexible one ... tied to the facts" of the case. Kumho, 526 U.S. at 149 (quoting Daubert, 509 U.S. at 591, 594); see also Jauregui v. Carter Mfg. Co., 173 F.3d 1076, 1083 (8th Cir. 1999)(emphasizing that "the district court must customize its inquiry to fit the facts of each particular case.")

**1. Qualifications**

As an initial matter, the court reviews Anderson's qualifications as an expert in this case. To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Anderson is a mechanical engineer.

He graduated from the General Motors Institute (renamed Kettering University) in Flint, Michigan, in 1960. (See Kluz Aff., Ex. 7 at 2.) He received a Bachelor of Science in Mechanical Engineering in 1961 after attending the Fifth Year Thesis program. (Id.) Anderson has consulted with General Motors since 1963, working on an accident reconstruction and research and engineering analysis, including analysis of automobiles, motorcycles, trucks, truck tractors, trailers and heavy equipment (on and off highway). (Id.) He has authored articles on accident reconstruction and co-authored an article for the National Academy of Forensic Engineers, entitled "Three-Dimensional Mathematical Model for Vehicle Dynamics Simulation Including Effects of Tires, Suspensions, and Terrain." (Id.) Anderson testified at his deposition that that article can apply to the manufacture of scissors lifts by providing a guide for modeling the dynamics of the unit. (Sherman Aff. Ex. E at 52-53.) He testified that the principles of this article can also be applied to create a mathematical model to explain what happened in the subject accident. (Id.)

Anderson considers the scissors lift an "industrial truck" and has experience in studying the design features of industrial trucks similar to the subject lift. (Sherman Aff. Ex. E at 21-31.) He has worked on the design of an industrial truck comparable to the SJII 4626 unit but did not work on the actual scissors "tower" or "stack." (Sherman Aff. Ex. E at 21.) Anderson also worked on the

design and testing of extendable booms on cranes, which Anderson considers similar to a scissors lift. (Sherman Aff. Ex. E at 23.) While Anderson does not have specific experience with scissors lifts, the court concludes that Anderson is qualified to testify as an expert in this case given his experience and knowledge and especially given the "'liberal thrust'" of the Federal Rules. Daubert, 509 U.S. at 588 (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169 (1988)); see Miles v. Gen. Motors Corp., 262 F.3d 720, 724 (8th Cir. 2001)(resolving doubts about whether an expert's testimony will be useful in favor of admissibility).

**2. Anderson's Opinions**

The test for reliability is "flexible." Kumho, 526 U.S. at 141-142. In this case, Anderson bases his testimony upon traditional engineering methodology. That method consists of the following steps: (1) define the problem, (2) accumulate facts, (3) make necessary assumptions, (4) select an appropriate and established scientific, mathematical or engineering principle, (5) solve the problem, (6) consider alternative solutions and (7) verify the results. His methodology is accepted within the scientific community. U.S. Amicus Brief, Kumho, No. 97-1709, 1998 WL 541950, at *15 (Aug. 24, 1998).

In following that methodology, Anderson inspected the lift and the accident scene, reviewed the photographs of the accident scene, and analyzed various product literature, including the SJII Series

Skyjack Operating and Parts Manual and the SJII Series Self-Propelled Mobile Elevating Work Platform Operating Manual. (Sherman Aff. Ex. F; Sherman Aff. Ex. E at 89-93.) Anderson also reviewed the various other discovery materials provided to the parties in this case, including deposition testimony, City Center blueprints, static and dynamic test results relating to an SJII 4626 with a three foot extension platform, SJII 4626 part specifications, and design drawings relating to the left rear brake of the SJII 4626. (Id.).

Based upon his analysis of the relevant facts, Anderson concluded that the Skyjack Model SJII 4626 design was inherently defective and dangerous to its user because it was equipped with a single wheel pin-brake at the left rear wheel with no other parking brakes (Sherman Aff. Ex. F).[2] Anderson considered alternative solutions and then ruled them out. After considering the evidence, Anderson concluded that the lift did not roll due to plaintiff's deliberately operating it (Sherman Aff. Ex. E at 130-31, 149-50) and that the hydraulic system did not malfunction (Id. at 134).

While Skyjack offers numerous objections to Anderson's knowledge and methodology, Skyjack's objections to his knowledge

[2] Use of a dual-wheel brake system appears to be accepted and supported by the industrial truck industry. Anderson testified that he has examined other industrial trucks which have had brake systems restraining at least two wheels and, in most cases, four wheels. (Sherman Aff., Ex. E at 153.) At the time of the accident, Skyjack manufactured lifts with the dual brake system as an option. (P, Skyjack's Operating Maintenance and Parts Manual.)

and methodology "go[] to the weight that the jury accords the testimony rather than to its admissibility." Miles, 262 F.3d at 724 (admitting testimony of expert who specialized in accident reconstruction despite objections). Accordingly, the court concludes that Anderson's testimony is the product of reliable principles and methods and that he applied the principles and methods reliably to the facts of the case.

**3. Relevance**

Plaintiff alleges that the lift was defective because it only had one brake. (Sherman Aff. Ex. E at 136-37.) Because Anderson's conclusions support plaintiff's product liability claim, they are relevant. See Daubert, 509 U.S. at 587 ("The Rule's basic standard of relevance ... is a liberal one.") Because Anderson's testimony is both reliable and relevant, the court concludes that Anderson's testimony would assist the trier of fact. Fed. R. Evid. 702. Accordingly, the court denies Skyjack's motion in limine to exclude Anderson's testimony.

**B. Skyjack's Motion for Summary Judgment**

Skyjack also moves for summary judgment against plaintiff, claiming that plaintiff cannot establish a prima facie case of products liability. After carefully reviewing the record with regard to defendants' motion for summary judgment, the court concludes that plaintiff has introduced substantial evidence on critical fact issues. Viewing the record in the light most

favorable to the non-moving party, as is required under Fed. R. Civ. P. 56, the court concludes that genuine issues of material fact exist as to plaintiff's claims against defendant Skyjack. Summary judgment is therefore inappropriate. See Celotex, 477 U.S. at 322-23. Accordingly, the court denies Skyjack's motion for summary judgment.

**C. Motion to Dismiss BMSI's Complaint**

Skyjack moves for summary judgment dismissing BMSI's complaint. Skyjack submits no memorandum in support of its motion but relies upon its memorandum previously served on March 20, 2003, the affidavit of Heath Sherman, the second affidavit of Heath Sherman and upon the file, record and proceedings herein. Based upon a review of the file, record and proceedings herein, the court denies Skyjack's motion.

**V. Columbia's Motion for Summary Judgment**

Third party-defendant Columbia has joined in the motion of its co-defendant BMSI as it relates to the third-party claims of defendant and third-party plaintiff Skyjack. However, in the event that the court concluded that Columbia and BMSI were not entitled to summary judgment and a complete dismissal of the third-party claims, Columbia moves for summary judgment seeking to limit the claims against it based on the "loaned-servant doctrine." The court does not address Columbia's motion for summary judgment based upon the "loaned-servant doctrine" because the court concludes that

Columbia is entitled to summary judgment on Skyjack's claims of negligence and strict liability.

**A. Negligence Claims**

Skyjack claims Columbia was negligent through the following acts and/or omissions:

> a. Carelessly and negligently failed to train plaintiff, Karl Oelhafen, with respect to the safe and proper use of the SJII 4626, serial number 74159;
>
> b. Failed to adequately supervise the work being performed by plaintiff Karl Oelhafen, at the time and place of the accident alleged in the complaint;
>
> c. Failed to provide the plaintiff, Karl Oelhafen, with equipment suitable for the work being performed at the time and place alleged in the Complaint;
>
> d. Failed to warn plaintiff, Karl Oelhafen, of the dangers then and there existing when Columbia Building Services, Inc. should have known that said warning was necessary to prevent injury to the plaintiff;
>
> e. Failed to adequately train the plaintiff, Karl Oelhafen, and instruct him in the practices to be used at this particular site so as to prevent the type of incident complained of;
>
> f. Failed to adequately inspect the premises where the work was being performed so as to discover a safe and suitable area for the plaintiff, Karl Oelhafen, to perform his work;
>
> g. Failed to provide appropriate maintenance to the SJII 4626, serial number 74159, scissor lift being used by plaintiff, Karl Oelhafen,, so as to prevent the type of incident complained of; and

h. Was otherwise negligent in its acts or omissions with regard to work plaintiff performed.

(Third Party Compl. at 6.) For the same reasons that the court granted BMSI's motion for summary judgment on Skyjack's negligence claims, the court grants Columbia's motion for summary judgment on (a)-(f) and (h) of Skyjack's negligence claims against Columbia. (Third Party Compl. at 6.)

The court also grants Columbia's motion on the remaining negligence claim - the failure to maintain claim - because Skyjack provides no evidence indicating that Columbia's failure to maintain caused plaintiff's accident. Skyjack's expert testified, in relevant part, that "an interlock switch on the powered extension platform was not operating properly or had been altered." (Sherman Aff. Ex. E at 8.) He then concluded that "Columbia's failure to perform the required inspections intended to insure fully functional and properly operating lifts may have led to this accident by allowing Mr. Oelhafen to drive with the extension deck extended." (Sherman Aff. Ex. E at 8.) Skyjack, however, presents no evidence to show that the interlock switch was out of alignment or not operating properly before the accident. Skyjack's conclusion that any alleged failure to maintain "may have led to this accident" (Skyjack's Mem. Opp. Summ. J. for Columbia at 9) is therefore pure speculation. Because mere speculation is not enough to defeat a motion for summary judgment, the court grants

Columbia's motion for summary judgment on Skyjack's "failure to maintain" claim.

**B. Strict Liability Claims**

As discussed, Minn. Stat. § 544.41, subd. 2 provides, in relevant part:

> Subd. 2. Once the plaintiff has filed a complaint against a manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant [nonmanufacturer], provided the certifying defendant is not within the category set forth in subdivision 3....
>
> Subd. 3. A court shall not enter a dismissal order relative to any certifying defendant even though full compliance with subdivision 1 has been made where the plaintiff can show one of the following:
>
>> (a) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;
>> (b) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>> (c) That the defendant created the defect in the product which caused the injury, death or damage.

Columbia argues that Skyjack has presented no evidence that any of the three specific exceptions to Minn. Stat. § 544.41 apply. Columbia further argues that Skyjack has provided no legal support

for its contention that strict liability claims can be asserted by a manufacturer against a non-manufacturer. For the same reasons that the court granted A.P.I.'s motion for summary judgment on Skyjack's strict liability claim against it, the court grants Columbia's motion for summary judgment on Skyjack's strict liability claim against Columbia.

**CONCLUSION**

Accordingly, after careful review, **IT IS HEREBY ORDERED** that:

1. A.P.I.'s motion for summary judgment on Skyjack's strict liability claim [Docket No. 50] is granted.

2. A.P.I.'s motion for summary judgment on Skyjack's negligence claim [Docket No. 50] is denied in part and granted in part.

   a. The court denies A.P.I.'s motion for summary judgment [Docket No. 50] on Skyjack's claim that A.P.I. was negligent in failing to inspect the premises.

   b. The court grants A.P.I.'s motion for summary judgment [Docket No. 50] on the Skyjack's remaining negligence claims against A.P.I.

3. BMSI's motion for summary judgment on Skyjack's negligence claims against it [Docket No. 61] is granted.

4. BMSI's alternative motion for summary judgment on its cross-claim against Columbia [Docket No. 61] is denied.

5. Skyjack's motion in limine to exclude expert testimony [Docket No. 74] is denied.

6. Skyjack's motion for summary judgment [Docket No. 74] is denied.

7. Skyjack's motion to dismiss BMSI's complaint in intervention [Docket No. 59] is denied.

8. Columbia's motion for summary judgment on Skyjack's negligence claims against it [Docket No. 83] is granted.

9. Columbia's motion for summary judgment on Skyjack's strict liability claim against it [Docket No. 83] is granted.

Dated: July 11, 2003

David S. Doty, Judge
United States District Court